FILED & JUDGMENT ENTERED
Christine F. Winchester

January 23 2026

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
Benjamin A. Kahn
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| Applied Machinery Rentals, LLC, ) | Chapter 7 |
| ) | |
| Debtor. ) | Case No. 23-30461 |
| _____) | |
| ) | |
| Cole Hayes, Chapter 7 Trustee ) | |
| for the Bankruptcy Estate of ) | |
| Applied Machinery Rentals, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. No. 25-03074 |
| ) | |
| Total Equipment & Rental of El ) | |
| Paso, LLC, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO DISMISS AMENDED COMPLAINT**

This adversary proceeding came before the Court for hearing on the Motion to Dismiss Amended Complaint filed by Total Equipment & Rental of El Paso, LLC ("Defendant"), ECF No. 12, as well as the

1

Response in Opposition and supporting brief filed by Cole Hayes, as chapter 7 trustee ("Plaintiff") for the bankruptcy estate of Applied Machinery Rentals, LLC, ("Debtor"). ECF Nos. 17 & 18. At the close of hearing the Court took this matter under advisement. For the reasons stated herein, the Court will deny Defendant's motion to dismiss.

## JURISDICTION AND AUTHORITY

The district court has subject matter jurisdiction over this adversary proceeding under 11 U.S.C. § 1334(b). On April 14, 2014, the district court entered its Amended Standing Order of Reference, referring all proceedings arising under title 11 and arising in or related to a case under title 11 to the bankruptcy judges for the Western District of North Carolina. Under 28 U.S.C. § 155(a), the Honorable Albert Diaz, Chief Judge of the United States Court of Appeals for the Fourth Circuit, assigned and designated the above-signed judge to this Court and to the above-captioned case, together with all associated adversary proceedings. Case No. 23-30461, ECF No. 489, at 3. Thereafter, Chief Judge Laura T. Beyer entered an Order referring this case and all related proceedings to the above-signed as contemplated by the Order entered by the Honorable Albert Diaz. Id. at 1-2.

Plaintiff alleges, and Defendant does not contest, that this matter is a statutorily core proceeding under 28 U.S.C. § 157. ECF No. 10, ¶ 5. The parties have consented to this Court entering

2

final orders and judgment in this adversary proceeding. Id. ¶ 9; see Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665, 678 (2015). Venue is proper under 28 U.S.C. § 1409.

## PROCEDURAL BACKGROUND

Plaintiff initiated this adversary proceeding on July 8, 2025. ECF No. 1. On September 4, 2025, Defendant filed a motion to dismiss Plaintiff's Second and Fourth Claims for Relief. ECF No. 7. On September 25, 2025, Plaintiff timely filed an Amended Complaint as of right under Federal Rule of Civil Procedure 15(a)(1)(B), made applicable to this adversary proceeding by Bankruptcy Rule 7015. ECF No. 10 (the "Amended Complaint"). On September 29, 2025, the Court entered an order denying the motion to dismiss the original complaint as moot. ECF No. 11. Defendant thereafter filed a motion to dismiss the Amended Complaint. ECF Nos. 12. On November 20 and 24, 2025, Plaintiff filed a response in opposition and supporting brief. ECF Nos. 17 & 18.

**FACTS**[1]

Debtor filed a petition under chapter 7 of title 11 on July 17, 2023. Case No. 23-30461, ECF No. 1. Plaintiff serves as chapter 7 trustee in the case. See Case No. 23-30461, ECF No. 16. Prepetition, Debtor purported to be in the business of acquiring, distributing, leasing, and selling Merlo Telehandlers. ECF No. 10, ¶ 12. Garth Errol McGillewie Jr. acted as Debtor's sole member, manager, and principal. Id. ¶ 13. McGillewie ran Debtor from his home in North Carolina and from Debtor's facility in South Carolina. Id. ¶ 14. McGillewie used Debtor to operate a Ponzi scheme. Id. ¶ 15. He borrowed money from creditors on false pretenses and used proceeds from new investors to pay previous investors and hide his fraud. Id.

McGillewie obtained loans purportedly to finance the import and purchase of telehandlers and represented to lenders that Debtor would purchase and then lease telehandlers and use lease proceeds to repay the loans. Id. ¶ 16. McGillewie pledged nonexistent

---

[1] The Court has accepted the factual allegations in the Amended Complaint, ECF No. 10, as true for purposes of determining whether the Amended Complaint states a claim under Fed. R. Civ. P. 12(b)(6), except those facts of which the Court may take judicial notice. See Fed. R. Civ. P. 12(b)(6). "[A] court may take judicial notice of its own records." Watkins v. Wells Fargo Bank, No. CIV.A. 3:10-1004, 2011 WL 777895, at *3 (S.D.W. Va. Feb. 28, 2011); see, e.g., Anderson v. Fed. Deposit Ins. Corp., 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (finding that a district court "should properly take judicial notice of its own records" at the motion to dismiss stage); see also Fed. R. Evid. 201(c). "[B]oth the Supreme Court of the United States and the Fourth Circuit have found that courts may take judicial notice of items or matters in the public record, even at the 12(b)(6) stage of a proceeding." Watkins, 2011 WL 777895, at *3; see Papasan v. Allain, 478 U.S. 265, 268 n.1 (1986); Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007).

4

telehandlers and pledged telehandlers to multiple lenders, representing that each lender had a first-priority lien on the same machine. Id. ¶ 17. McGillewie also sold telehandlers out of trust to third parties without the lenders' knowledge or consent and without remitting the sale proceeds to the lenders. Id. ¶ 18. McGillewie's scheme included inducing creditors to purchase telehandlers that usually did not exist and at well below fair market value, and then, without the creditors taking possession, leasing the telehandlers back to Debtor to be leased to other parties. Id. ¶ 19. This arrangement allowed investors in the Ponzi scheme to be paid returns. Id. McGillewie used the proceeds to fund an extravagant lifestyle for himself and his family as well as to enrich his friends. Id. ¶¶ 22, 23.

Debtor's liabilities substantially exceeded its assets as of year-end 2019 through 2022 and Debtor became more indebted as time passed. Id. ¶ 47. Debtor also lacked revenue from legitimate business activities throughout this time. Id. ¶ 28. But McGillewie hid the fact that Debtor's liabilities far exceeded its assets and siloed fraudulent deals so that investors were not aware of his conduct. Id. ¶¶ 27, 33. No party – other than McGillewie – could have known of the widespread fraud scheme until 2023. Id. ¶¶ 15, 30.

Debtor made two transfers to Defendant: $100,000.00 on February 13, 2020, and $50,000.00 on February 28, 2020. Id. ¶ 34.

5

These transfers are not documented in Debtor's books. Id. ¶ 38. Plaintiff investigated the relationship between Debtor and Defendant, including by sending Rule 2004 subpoenas, but was unable to discern the basis of the transfers. Id. ¶ 37. These transfers were made under the guise of rent for or payment to repurchase telehandlers that may or may not have existed. Id. ¶ 40. In reality, any rent arrangement associated with these transfers was a façade for an investment by Defendant in the Ponzi scheme. Id. ¶ 41.

On August 14, 2023, Defendant filed a proof of claim for $62,152.63 (POC No. 7). Id. ¶ 44. This claim represents late charges from 2020 or 2021 assessed on "rent" owed by Debtor to Defendant for telehandlers that (i) may or may not have existed or (ii) were paid for by Debtor in 2020, 2021, and 2022. Id. ¶ 45.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Bankruptcy Rule 7012, states that a complaint, or certain claims therein, may be dismissed for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Supreme Court has explained that "[a] claim

6

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. While the plausibility requirement is not a probability requirement, it "asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

When there are two plausible inferences from the facts, the court must accept the inference favorable to the claimant. As explained by Judge Drain,

> 'Because plausibility is a standard lower than probability, a given set of actions may well be subject to diverging interpretations, each of which is plausible,' and '[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion.' Thus, '[a] court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible.'

In re Tops Holding II Corp., 646 B.R. 617, 646-47 (Bankr. S.D.N.Y. 2022) (quoting Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 184-85 (2d Cir. 2012)).

Courts employ a two-part test to determine whether a claim should be dismissed under Rule 12(b)(6). In re Bynum, No. 12-10660, 2012 WL 2974694, at *2 (Bankr. M.D.N.C. July 20, 2012). First, the Court must accept all the complaint's well-pleaded facts as true and view the complaint in a light most favorable to the non-moving party. Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also In re

7

Rutledge, 510 B.R. 491, 499 (Bankr. M.D.N.C. 2014) (noting that the Court will "consider documents [or facts] incorporated into the Complaint by reference"). Then, the Court must determine whether facts cited in support of each claim demonstrate that the plaintiff may plausibly be entitled to relief. Id.; see also In re Gause, 525 B.R. 35, 37 (Bankr. M.D.N.C. 2014) (explaining that all inferences are liberally construed in the plaintiff's favor). "In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." Matkari, 7 F.3d at 1134.

## DISCUSSION

In the Amended Complaint, Plaintiff first seeks to avoid, recover, and preserve the $150,000.00 that Debtor transferred to Defendant in February 2020 under 11 U.S.C. §§ 544, 550, and 551 based on constructive fraud and actual fraud under North Carolina law and South Carolina law. ECF No. 10, at 8. Second, if Plaintiff is successful on the first claim and Defendant does not repay the amount transferred to Plaintiff, Plaintiff asserts that Defendant's proof of claim should be disallowed under § 502(d). Id. ¶ 77. Alternatively, if Plaintiff is successful on the first claim and Defendant does not repay the amount transferred to Plaintiff, Plaintiff asserts that Defendant's proof of claim

8

should be equitably subordinated to the claims of all other creditors with allowable claims under § 510(c). Id. ¶ 80.

In its motion to dismiss, Defendant asserts six arguments: 1) Plaintiff's First Claim for Relief should be dismissed because it constitutes a "shotgun pleading" as it fails to separate each cause of action into separate counts, ECF No. 12, ¶¶ 4-7; 2) Plaintiff's claims for actual and constructive fraud arising under North Carolina law should be dismissed because the facts alleged are insufficient to warrant the application of North Carolina law, id. ¶ 15;[2] 3) Plaintiff's claim for actual fraud under South Carolina law should be dismissed because Plaintiff has failed to allege that Debtor's fraudulent intent is imputable to Defendant, id. ¶ 20; 4) Plaintiff's claim for constructive fraud under South Carolina law should be dismissed because Plaintiff has failed to allege that Debtor received no (or nominal) consideration in exchange for the transfer, id. ¶¶ 21, 22; 5) Because Plaintiff's First Claim for Relief should be dismissed Plaintiff's claim under § 502(d) should also be dismissed, id. ¶ 25; and 6) Plaintiff's claim under § 510(c) should be dismissed because the Amended Complaint is devoid of any allegations that Defendant engaged in inequitable conduct. Id. ¶¶ 27, 28.

---

[2] Defendant does not contend that the allegations in the Amended Complaint are insufficient to state a claim to the extent that North Carolina law applies. See ECF No. 12.

9

**I. Defendant's motion to dismiss Plaintiff's First Claim for Relief on the basis that it constitutes a "shotgun pleading" is denied.**

Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Rule 10(b) requires the plaintiff to state his claims in numbered paragraphs, each limited as far as practicable to a single set of circumstances. Fed. R. Civ. P. 10(b). Rule 10(b) also states that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count . . . ." Id.

A "shotgun pleading" violates Federal Rule of Civil Procedure 8(a)(2), 10(b), or both.[3] Barmapov v. Amuial, 986 F.3d 1321, 1324 (11th Cir. 2021). The Eleventh Circuit has identified "four rough types or categories of shotgun pleadings." Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1321 (11th Cir. 2015). One type of shotgun pleading identified by the Eleventh Circuit is a pleading that does not separate into a different count each cause of action or claim for relief. Id. at 1323. Importantly, a complaint is not subject to dismissal as an impermissible shotgun pleading just because it falls into one of the categories identified by the Eleventh Circuit. See In re OpenPeak, Inc., No. 16-28464 (SLM), 2020 WL 7360482, at *17 (Bankr. D.N.J. Dec. 14,

---

[3] Federal Rules of Civil Procedure 8 and 10 are made applicable to this adversary proceeding by Federal Rules of Bankruptcy Procedure 7008 and 7010 respectively.

2020). Instead, the touchstone inquiry is whether the complaint "give[s] the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Weiland, 792 F.3d at 1323; see also Wilkinson v. Wells Fargo Bank, N.A., No. 3:19-CV-00580-RJC, 2020 WL 2542867, at *3 (W.D.N.C. May 19, 2020) ("A shotgun pleading is one that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading or one in which it is virtually impossible to know which allegations of fact are intended to support which claims for relief.") (quotations omitted), aff'd Wilkinson v. FINRA, No. 22-1090, 2023 WL 418063 (4th Cir. Jan. 26, 2023).

Plaintiff's First Claim for Relief is based on a single set of circumstances, and the inclusion of each of the causes of action asserted in this claim does not confuse the issues. Defendant's motion to dismiss demonstrates that Defendant understands the claims asserted against it and can formulate a response. See ECF No. 12, ¶ 6 ("Plaintiff's First Claim for Relief appears to assert four (4) separate and distinct causes of action: (i) actual fraudulent transfer under North Carolina fraudulent transfer law; (ii) constructive fraudulent transfer under North Carolina fraudulent transfer law; (iii) actual fraudulent transfer under South Carolina fraudulent transfer law; and (iv) constructive fraudulent transfer under South Carolina fraudulent transfer law."). Therefore, Plaintiff's First Claim for Relief does not

11

constitute an impermissible "shotgun pleading" and Defendant's motion to dismiss on this basis is denied.

## II. Defendant's motion to dismiss is denied as to Plaintiff's claims for actual and constructive fraud under North Carolina law.

Section 544(b) permits the trustee to avoid any transfer of an interest in the debtor in property that is voidable under applicable law by an unsecured creditor. 11 U.S.C. § 544(b). The "applicable law" upon which a trustee relies is most often state law. Friedman v. Wellspring Cap. Mgmt., LLC, No. AP 19-80071-DD, 2020 WL 5083319, at *4 (Bankr. D.S.C. Aug. 27, 2020).

Courts often defer choice of law decisions until after completion of discovery. M.D. Russell Constr., Inc. v. Consol. Staffing, Inc., No. 22-1420, 2023 WL 8798086, at *3 (4th Cir. Dec. 20, 2023) (collecting cases); see also In re Martinez Quality Painting & Drywall, Inc., No. 22-30357, 2025 WL 828882, at *4 (Bankr. W.D.N.C. Mar. 14, 2025) (stating that "many courts are reluctant to engage in a choice of law analysis given the potentially fact-intensive inquiry" when considering a motion to dismiss). If a court defers the choice of law analysis, it may apply the choice of law as alleged in the complaint under the Rule 12(b)(6) standard. Id.

To the extent that a federal court engages in a choice of law analysis, it generally must apply the choice of law principles of the state in which the federal court sits. Yancey v. Remington

12

Arms Co., LLC, No. 1:10CV918, 2013 WL 5462205, at *3 (M.D.N.C. Sept. 30, 2013) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).  As a federal court sitting in North Carolina, the Court must apply North Carolina choice of law principles.  See Friedman v. Wellspring Cap. Mgmt., LLC, No. AP 19-80071-DD, 2020 WL 5083319, at *4 (Bankr. D.S.C. Aug. 27, 2020) (citing In re Merritt Dredging Co., Inc., 839 F.2d 203, 205 (4th Cir. 1988)).

North Carolina's Uniform Voidable Transactions Act contains a choice of law provision which provides that a claim "is governed by the local law of the jurisdiction in which the debtor is located when the transfer is made."  N.C. Gen. Stat. § 39-23.9A(b).  "A debtor that is an organization and has only one place of business is located at its place of business."  N.C. Gen. Stat. § 39-23.9A(a)(2).  "A debtor that is an organization that has more than one place of business is located at its chief executive office."  N.C. Gen. Stat. § 39-23.9A(a)(3).  A determination of where Debtor maintained a place of business and where Debtor's chief executive office was located is a question of fact.

In Howard v. Iomaxis, LLC, the plaintiffs alleged that the purported debtor had been a North Carolina LLC since 2004.  2024 NCBC 76, 123 (N.C. Super. Ct. Nov. 27, 2024).  The North Carolina Superior Court of Mecklenburg County found that this allegation was insufficient to support an inference that its chief executive

13

office was in North Carolina, and therefore the allegations did not support a plausible claim that the transferor was a debtor under N.C.G.S. § 39-23.9A(a). Id. at 124. In Iomaxis the plaintiffs did not allege that the purported debtor had one or more places of business and, if more than one place of business, the location of its chief executive office. Id. In fact, in a separate document attached to the complaint in that case, the purported debtor professed to have a principal place of business in Dallas, Texas. Id. at 124 n.21. Even if Howard were binding precedent,[4] Plaintiff's allegations in this case nudge the claim across the line of plausibility.

Plaintiff has alleged that McGillewie ran Debtor from his home in North Carolina and from Debtor's facility in South Carolina, and that McGillewie was the sole member, manager, and principal. ECF No. 10, ¶¶ 13, 14. Interpreting these facts in a light most favorable to Plaintiff, it is plausible that Debtor maintained a place of business in North Carolina and South Carolina and that Debtor's chief executive office was in North Carolina.

---

[4] Although persuasive precedent, Howard is not binding precedent because this Court must forecast what the North Carolina Supreme Court would do and is not bound by the decisions of state trial courts. See Adamson v. Columbia Gas Transmission, LLC, 579 F. App'x 175, 177 (4th Cir. 2014) ("A federal court sitting in diversity has an obligation to apply the law of the forum state as it is interpreted by the state's highest court. If the highest state court has not addressed the issue or the law is unclear, the federal court must forecast a decision of the state's highest court in light of canons of construction, restatements of the law, treatises, recent pronouncements of general rules or policies by the state's highest court, well considered dicta, and the state's trial court decisions.") (citations omitted).

14

Determining what law applies in this proceeding will require a factual inquiry into whether North Carolina and South Carolina each constituted a place of business for Debtor, and if so, which of these locations was Debtor's chief executive office.  The Court cannot make this factual determination at the Rule 12(b)(6) stage.  Therefore, the Court will defer making a choice of law determination until the factual record is developed and deny Defendant's motion to dismiss Plaintiff's claims of actual and constructive fraud under North Carolina law.

### III. Defendant's motion to dismiss Plaintiff's claims for actual and constructive fraud under South Carolina law is denied.

Even if South Carolina law applies, the Court would not dismiss the claims at this stage.  Under S.C. Code Ann. § 27-23-10, also known as the Statute of Elizabeth, "[e]xisting creditors may avoid transfers under an actual fraudulent transfer theory or under a constructive fraud theory."  In re J.R. Deans Co., Inc., 249 B.R. 121, 130 (Bankr. D.S.C. 2000).

#### a. Actual Fraud

Under South Carolina law, the elements of an actual fraudulent transfer are "'(1) the transfer was made by the grantor with the actual intent of defrauding his creditors; (2) the grantor was indebted at the time of the transfer; and (3) the grantor's intent is imputable to the grantee."  Id. (quoting Mathis v. Burton, 319 S.C. 261, 264-65 (Ct. App. 1995)).  The existence of a Ponzi scheme creates a presumption of fraudulent intent on the part of the

15

proponent of the scheme. Ashmore v. Taylor, No. CA 3:13-2303-MBS, 2014 WL 6473714, at *3 (D.S.C. Nov. 18, 2014). This intent is imputable to the transferee if the transferee had actual knowledge of or participated in the scheme or "at the time of the transfer the transferee had notice of circumstances which would arouse the suspicion of an ordinarily prudent man and cause him to make inquiry as to the purpose for which the transfer was being made, which would disclose the fraudulent intent of the maker." Id. at *4 (quotations omitted).

Plaintiff alleges: (1) the transfers had no identifiable business purpose and were made by McGillewie under the guise of "rent" for or payment to repurchase telehandlers that may or may not have existed, ECF No. 10, ¶ 40; (2) this rent arrangement was a façade for an investment by Defendant in the Ponzi scheme, id. ¶ 41; (3) the transfers were part of McGillewie's fraud scheme, id. ¶ 42; (4) Defendant's proof of claim represents late charges on "rent" due by Debtor to Defendant for those telehandlers, id. ¶ 45; and (5) the whole-number dollar amounts and lack of documentation of the transfers are badges of fraud. Id. ¶ 38. These allegations, construed in the light most favorable to Plaintiff, support a plausible inference that either Defendant knew about the fraud or that under the circumstances, an ordinarily prudent person would have inquired into and discovered the fraud.

16

Defendant argues that the Amended Complaint's allegations that McGillewie siloed fraudulent deals "so that other investors were not aware of his conduct" and that no creditor could have or did discover the "widespread fraud scheme" until 2023 conclusively establish that Defendant did not have knowledge of Debtor's fraud and belie that Defendant should have known about the fraud. ECF No. 12, ¶¶ 18, 19. Drawing the allegations in the light most favorable to Plaintiff and even accepting that Defendant could not and did not discover the widespread fraud scheme until 2023, it remains plausible that Defendant discovered or could have discovered any of McGillewie's fraudulent actions in relation to these specific transfers. The badges of fraud alleged in the Amended Complaint when considered in light of the entire transaction and construed in a light most favorable to Plaintiff, including the whole number dollar figures and the lack of documentation[5] or any business purpose for the transfers, plausibly state a claim that Defendant should have been aware of the avoidability of the transfers. Thus, the Amended Complaint, construed in a light most favorable to the non-moving party,

---

[5] Consistent with the allegation that Debtor's records lacked any documentation, Defendant's proof of claim attaches invoices for late payments and account statements but does not attach a lease agreement or loan documentation. ECF No. 23-30461, Claim No. 7. There also is no allegation that the transfers were related to the transactions, if any, in the proof of claim, and the Court may not make such an inference at this stage of the litigation.

17

sufficiently alleges that Debtor's fraudulent intent is imputable to Defendant for purposes of South Carolina law.

### b. Constructive Fraud

Under a theory of constructive fraud, actual fraudulent intent is not necessary. In re J.R. Deans Co., Inc., 249 B.R. 121, 130 (Bankr. D.S.C. 2000). The elements of a constructive fraudulent transfer are "(1) the debtor makes a transfer but does not receive valuable consideration in return; (2) the debtor was indebted to the plaintiff at the time of transfer; and (3) the debtor does not have sufficient property to pay his debt to plaintiff in full." In re Genesis Press, Inc., No. CV 6:16-3762-TMC, 2018 WL 11672750, at *3 (D.S.C. Mar. 5, 2018). Valuable consideration is any "right, interest, profit, or benefit, accruing to the one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other." Furman Univ. v. Waller, 117 S.E. 356, 358 (1923) (quotations omitted). "'[G]ross inadequacy of consideration and "without consideration" are not synonymous in the law.'" Royal Z Lanes, Inc. v. Collins Holding Corp., 337 S.C. 592, 595 (1999) (quoting Jeffords v. Berry, 247 S.C. 347, 351 (1966)). Grossly inadequate consideration does not make a conveyance constructively fraudulent. In re Hanckel, 512 B.R. 539, 549 (Bankr. D.S.C. 2014), order aff'd, appeal dismissed sub nom., In re Richardson Miles Hanckel, III, No. 2:14-CV-2898, 2015 WL 7251714 (D.S.C. Mar. 10,

18

2015).  Instead, the adequacy of the consideration is treated as a badge of fraud and actual intent must be proven.  Id.

Plaintiff alleges: (1) Plaintiff was unable to determine the basis of the transfers, ECF No. 10, ¶ 37; (2) the transfers had no identifiable business purpose and lacked documentation, id. ¶¶ 38, 40; (3) the whole-number dollar amounts and lack of documentation of the transfers are badges of fraud, id. ¶ 38; (4) these transfers mirror other fraudulent transactions made by McGillewie with the intent to hinder, delay, or defraud creditors, id. ¶ 39; (5) McGillewie made the transfers under the guise of "rent" for or payment to repurchase telehandlers that may or may not have existed, id. ¶ 40; and (6) the transfers were part of McGillewie's fraud scheme. Id. ¶ 42.  These allegations, construed in the light most favorable to Plaintiff, create a plausible inference that Debtor received no (or nominal) consideration in exchange for the transfers.

Defendant argues that because Plaintiff alleges that Debtor "did not receive reasonably equivalent value in exchange for" the transfers instead of alleging that Debtor received no (or nominal) consideration for the transfers, Plaintiff fails to state a claim for constructive fraud under South Carolina law.  ECF No. 12, ¶ 22.  These statements in the Amended Complaint are legal conclusions, not allegations of fact.  Plaintiff is not required to explicitly state in the Amended Complaint that Debtor received

19

no (or nominal) consideration for the transfers. Instead, Plaintiff need only allege facts that create a plausible inference of the lack of consideration. The Amended Complaint sufficiently pleads that Debtor received no (or nominal) consideration in exchange for the transfers. Accordingly, Defendant's motion to dismiss Plaintiff's claims for actual and constructive fraud under South Carolina law is denied.

### III. Defendant's motion to dismiss Plaintiff's claims under §§ 502(d) and 510(c) is denied.

At the hearing, Defendant conceded that the claims under §§ 502(d) and 510(c) must survive at this stage to the extent that the actual fraudulent transfer claims survive. ECF No. 19, at 00:16:50-00:18:00. Since the Court has permitted the actual fraudulent transfer claims to move forward at this time, Plaintiff's §§ 502(d) and 510(c) claims similarly will move forward and Defendant's motion to dismiss these claims is denied.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant's motion to dismiss is denied.

[END OF DOCUMENT]

**SO ORDERED**.

This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order.

United States Bankruptcy Court